IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHERLON CURTIS-HAMPTON, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-0062-L-BK |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order 3*, this case has been referred to the undersigned for Findings, Conclusions, and Recommendation. The Court now considers Plaintiff's *Motion for Summary Judgment* (Doc. 17) and Defendant's *Motion for Summary Judgment* (Doc. 18). For the reasons that follow, it is recommended that Defendant's *Motion for Summary Judgment* be GRANTED, Plaintiff's *Motion for Summary Judgment* be DENIED, and the Commissioner's decision be AFFIRMED.

### I. BACKGROUND[1]

**A.      Procedural History**

Sherlon Curtis-Hampton seeks judicial review of a final decision by the Commissioner of Social Security denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Title II and XVI of the Social Security Act (Act). On March 23, 2009, Plaintiff applied for DIB and SSI, claiming that she had been disabled since February 28,

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

1

2009, due to hypertension, diabetes mellitus, and arthritis in the left knee. (Tr. at 10, 54-57, 194). Her application was denied initially and on reconsideration, and Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 10, 58-65, 71-76). On March 26, 2010, the ALJ issued his decision finding Plaintiff not disabled, which Plaintiff timely appealed to the Appeals Council. (Tr. at 6-18, ). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. (Tr. at 1-5). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g). Based on the relevant pleadings, evidence, and applicable law, the decision of the Commissioner should be **AFFIRMED**.

**B.**     **Factual History**

    **1.**     **Age, Education, and Work Experience**

Plaintiff was born on August 22, 1954, and was 55 years old at the time of the ALJ's decision. (Tr. at 7, 121, 129). She has a high school education and prior work experience as a filing clerk, records clerk, data entry clerk, and accounts payable clerk. (Tr. at 24-27, 46, 202-204).

    **2.**     **Medical Evidence**

Medical records dating back to August 2008 indicate Plaintiff suffers from diabetes and hypertension. (Tr. at 270). In addition, on March 26, 2009, Plaintiff sought treatment at Parkland Health & Hospital System complaining of shoulder and knee pain. (Tr. at 287-290). On April 20, 2009, Dr. Jeanine Kwun completed a case assessment form that indicated Plaintiff suffered from diabetes, hypertension, and right knee pain. (Tr. at 300). However, Dr. Kwun noted that these impairments were not severe. (Tr. at 300). Subsequently, on July 14, 2009, Dr.

David Ukoha performed a consultive examination and assessed Plaintiff as suffering from diabetes, hypertension, left shoulder pain, right knee pain, and hyperlipidemia. (Tr. at 305). Dr. Ukoha also noted that x-rays of Plaintiff's shoulder and knee were normal and showed no acute fracture and no soft tissue swelling. (Tr. at 305).

### 3. Hearing Testimony

The ALJ held a hearing on February 25, 2010, where Plaintiff and a vocational expert testified. (Tr. at 19). Plaintiff, who was represented by counsel, testified that she was separated from her husband and lived in a house with her daughter. (Tr. at 19, 23). Plaintiff graduated from high school and attended about a year of college. (Tr. at 24). Plaintiff claimed that she has been disabled since February 2009, but has since worked a few weeks as a clerk and at Sears for "about two months." (Tr. at 24). Plaintiff had to quit her job at Sears because she had to stand a lot and her leg started bothering her. (Tr. at 25).

Plaintiff worked for the City of Dallas as a clerk in equipment services from November 1993 to May 1996, and in accounting and payroll from July 1998 until July 2001. (Tr. at 27-28). Beginning in about 2000, Plaintiff worked "in a lot of temporary agencies" as a clerk, and her longest employment at a single job was "almost a year." (Tr. at 26). While working in the accounting department, Plaintiff did "a lot of bending and stooping with the files." (Tr. at 28-29). In addition, Plaintiff would sit and stand during her job, deliver files and folders, and would have to lift papers or books. (Tr. at 29). The heaviest thing Plaintiff had to lift was a box of paper. (Tr. at 29).

Plaintiff stopped working because her knee started hurting and it swelled once or twice a month. (Tr. at 30). Plaintiff averred she can only stand for about 15 minutes, and when she

3

walks or bends her knee, the pain gets worse. (Tr. at 31-32). However, Plaintiff has never had a surgical evaluation or injections to her knee. (Tr. at 32-33). When sitting, Plaintiff needs to have her knee straight and often elevates her leg on a two- to three-foot high stool. (Tr. at 42-43). Plaintiff also suffers from high blood pressure, headaches, stiffness in her neck, diabetes, and dizziness. (Tr. at 34-35).

Last to testify was "Mr. Ballen," the vocational expert. (Tr. at 45). He testified that over the previous 15 years Plaintiff worked in the clerical field. (Tr. at 46). Some of Plaintiff's jobs have been at the light level (filing clerk), semi-skilled and light level (records clerk), and semi-skilled and sedentary level (data entry clerk and accounts payable clerk). (Tr. at 46). Plaintiff's former jobs ranged from light to sedentary (depending on how much she had to be on her feet), consistent with the Dictionary of Occupational Titles. (Tr. at 46). The vocational expert testified that, specifically, Plaintiff's former jobs as a data entry clerk and an accounts receivable/payable clerk are at the sedentary level. (Tr. at 47). In addition, he testified that the accounts payable clerk position was considered separately from Plaintiff's other jobs and was more well-defined than those other jobs. (Tr. at 50).

When presented with the ALJ's residual functioning capacity ("RFC") finding as outlined below, the vocational expert opined that Plaintiff would be able to perform her past relevant work at a sedentary level. (Tr. at 47-48). However, if she could not stand for two hours a day, she would be precluded from performing her past relevant work. (Tr. at 47-48).

## C. ALJ's Findings

The ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2012, and that the Plaintiff had not engaged in substantial gainful activity since February 28,

2009, the alleged onset date. (Tr. at 12). Plaintiff had the severe impairments of knee disorder, shoulder disorder, diabetes, and hypertension. (Tr. at 12). The ALJ concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404 during the relevant time period. (Tr. at 12). The ALJ further determined Plaintiff had a restricted sedentary RFC to lift up to ten pounds, stand or walk two hours out of an eight-hour workday, and sit for six hours in an eight-hour workday with one leg extended out on a two to three foot stool.[2] (Tr. at 13-14). The ALJ concluded that Plaintiff was able to perform her past relevant work as an accounts payable clerk and, therefore, was not disabled as defined by the Act. (Tr. at 14).

## II. ANALYSIS

**A**.   **Legal Standards**

   **1**.   **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does

---

   [2] The residual functional capacity is "the most [a claimant] can still do despite [his or her] limitations," and is determined based on all the relevant evidence in the record and by taking into consideration all medically determinable impairments, including those that are not severe. 20 CFR § 404.1545.

not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

### 2. Disability Determination

The definition of disability under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f),

416.920 (b-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

**B.    Issues for Review**

*1. Whether substantial evidence supports the ALJ's characterization of Plaintiff's past work as an accounts payable clerk as sedentary?*

Plaintiff first argues that the ALJ's finding that Plaintiff could perform her past work was not supported by substantial evidence because that past relevant work was a combination of light and sedentary work, and not simply sedentary work. (Doc. 17 at 8-9). A review of the record reveals, however, that the ALJ's finding that Plaintiff was capable of performing her past relevant work as an accounts payable clerk was supported by the evidence, specifically, the testimony of a vocational expert.

A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *See Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995). The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed. *Id*. (citation omitted).

Here, the vocational expert testified that, based on his review of the work history reports, Plaintiff's former job as an accounts receivable/payable clerk, performed from 1998-2001, is at the sedentary level, consistent with the Dictionary of Occupational Titles. (Tr. at 46-47, 49-50). The ALJ also relied on the vocational expert's testimony that the accounts payable clerk position was more well-defined than Plaintiff's other temporary jobs which had a variety of responsibilities and required Plaintiff to be on her feet a lot more. (Tr. at 50).

Plaintiff also contends that the vocational expert did not consider all of the evidence and that, by extension, neither did the ALJ. (Doc. 17 at 10). In support of her argument, Plaintiff points to the fact that the vocational expert only offered two exhibits during his testimony. *Id*. The Court finds Plaintiff's argument unpersuasive, however. There is nothing in the record to suggest that the vocational expert limited his review only to the two exhibits offered, or that the vocational expert and the ALJ did not consider all the relevant evidence presented.

Accordingly, the Court finds that the ALJ's determination that Plaintiff's past work as an accounts payable clerk was sedentary and, thus, Plaintiff could perform her past relevant work, is supported by substantial evidence.

*2. Whether the ALJ's RFC determination was supported by substantial evidence*

Finally, Plaintiff argues that the ALJ's RFC finding that Plaintiff could work with "one leg extended out on a 2-3 foot stool" is "absurd and foolish" because her raised leg could not fit underneath a normal desk/workstation. (Doc. 17 at 16-17). However, the ALJ's finding is supported by the evidence, specifically Plaintiff's testimony that the procedure helps her knee pain and the vocational expert's testimony that Plaintiff would be able to perform her past work as an accounts payable clerk with such accommodation. (Tr. at 42-43, 47-78). Conversely,

Plaintiff's assertion finds no support in the record and is mere conjecture.

Thus, the Court finds Plaintiff's argument lacks merit, and concludes that the ALJ's RFC finding is supported by substantial evidence.

## II. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Defendant's *Motion for Summary Judgment* (Doc. 18) be **GRANTED**, Plaintiff's *Motion for Summary Judgment* (Doc. 17) be **DENIED**, and the Commissioner's decision be **AFFIRMED**.

**SIGNED** September 28, 2011.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE